A00A0400, A00A0401, A00A0402. DAKER v. THE STATE (three cases).

(533 SE2d 393)

PER CURIAM.

Waseem Daker was charged with two counts of aggravated stalking. The indictment alleged that, in violation of a condition of his pretrial release, Daker contacted Lottie Spencer on October 14 and 20, 1995, at her home without her consent for the purpose of harassing and intimidating her. The jury returned a verdict of guilty on both counts. After entry of conviction and sentence, Daker moved for a new trial and for a sentence modification. After those motions were denied, Daker unsuccessfully sought to recuse the trial judge. In Case No. A00A0400, Daker appeals his convictions and the denial of his motion for new trial. In Case No. A00A0401, he appeals the denial of his motion to recuse the trial judge. In Case No. A00A0402, he appeals the order denying his motion for sentence modification. We find no reversible error in any of the appeals and affirm.

Spencer worked as an office manager for a group of psychiatrists. Toward the end of 1993, she became an avid participant in a sport known as paint ball. She and Daker played on the same team. When they met, she was about 30 years old and he was about 17.

Spencer's testimony, as corroborated by a number of prosecution witnesses including law enforcement officers, showed the following. In fall 1994, Daker started telephoning Spencer to discuss paint ball but began to confide personal problems, including his being suicidally depressed. Daker also expressed romantic feelings toward her and then became irate upon being rebuffed.

Beginning in winter or spring 1995, Daker embarked on a campaign of harassment against Spencer. He made incessant telephone calls to her apartment at all hours of the day and night. Although uninvited, he often appeared at the apartment at all hours, knocked loudly on her door and windows, and refused to leave. He made surreptitious attempts to enter her apartment, followed by the commission of actual burglaries. Eventually, he threatened to harm or kill Spencer and her daughter and, in one instance, even attempted to force Spencer's car off the road. Spencer testified that she allowed the harassment to continue without reporting the matter to police because of his threats, his parents' pleas, and her concern for his welfare.

By summer 1995, however, Spencer began making complaints to the police. At the end of July, she swore out a warrant against Daker for stalking. A hearing was held in the Magistrate Court of Fulton County on August 1. Although the hearing was continued on the condition that he have no contact with Spencer, he came to her apartment and made numerous telephone calls to her on August 11. As a

result, he was arrested. But following a hearing on August 15, he was again released on the condition that he have no contact with Spencer.

To escape Daker's harassment, Spencer moved from her apartment and began living in a house with Carmen Smith on September 1. On that date, Daker appeared at Spencer's place of employment and was arrested again. During his incarceration, he began making threatening telephone calls to Spencer from jail. At a hearing on September 20, the magistrate issued a written order releasing Daker into the custody of his attorney on the condition that counsel have him admitted to Charter Peachford Hospital. The court ordered Daker to remain there or in another facility until released by his attending physician. Again, as a condition of his release, Daker was ordered to have no contact of any type with Spencer. After Daker was admitted to the hospital, the harassing telephone calls to Spencer stopped.

When Daker was released from inpatient psychiatric treatment on October 13, he began calling Spencer at work and at home, attempting to disguise his voice. Spencer recorded telephone calls made on October 14 and 20. She testified that after she had taken her phone off the hook on October 20, Smith's phone rang seconds later and Smith immediately exclaimed that "my f—ing stalker was calling her." Three days after the October 20 telephone call, Smith was killed by foul play, and her homicide remains unsolved.

According to Daker, Spencer had initiated a romantic relationship with him and the contacts between the two of them were consensual. Although Daker acknowledged acting furtively at times, he attributed this to an attempt by him and Spencer to keep their relationship secret because of the difference in their ages. Daker's claim that he and Spencer had been romantically involved was supported in various respects by testimony from other defense witnesses.

1. Daker charges the trial court with error in denying his challenge under *Batson v. Kentucky*[1] to the State's use of a peremptory strike to remove the sole black member of the jury venire.

> The United States Supreme Court has established a three-step test for evaluating challenges to peremptory strikes. Once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has

---

[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

proved purposeful racial discrimination. The trial court's decision on a *Batson* motion rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous.[2]

The prosecutor stated that he struck the juror in question because she might have been overly sympathetic to Daker as a result of her academic background in psychology and study of depressive reactions. Another proffered reason was that the juror indicated a possible distrust of law enforcement during voir dire questioning. Daker claims that these reasons were pretexts for racial discrimination.

He points out that three other prospective jurors who had actually suffered from depression were accepted by the State. But at least two of those prospective jurors were also victims of stalking. On balance, the prosecutor reasonably could have concluded that those jurors would have been more sympathetic to the prosecution than the defense.

Daker also argues that during voir dire examination the excluded juror did not in fact give any indication that she distrusted police. We are unable to resolve this argument because voir dire was not transcribed. Consequently, we must presume that the responses given by the juror supported the trial court's ruling.[3] The court's finding that the strike was not exercised in a racially discriminatory fashion is not clearly erroneous.

2. Daker contends that the trial court erred in admitting evidence of prior difficulties between Spencer and him without requiring the State to comply with the notice requirements of Uniform Superior Court Rules 31.1 and 31.3 (B). There is no merit in this complaint, as the requirements of these rules do not apply to instances of prior difficulties between the defendant and victim.[4]

3. Daker charges the trial court with error in admitting in evidence an audiotape of a telephone conversation between him and Spencer.

The tape was made by Daker. He argues that the State did not lay the foundation required for its admission because gaps in it show that it had been altered while in police custody.[5] Because the evi-

---

[2] (Citations and punctuation omitted.) *Williams v. State*, 236 Ga. App. 190 (511 SE2d 561) (1999).

[3] See *Meier v. State*, 190 Ga. App. 625, 626 (1) (379 SE2d 588) (1989).

[4] *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998).

[5] See *Johnson v. State*, 271 Ga. 375, 378 (4) (519 SE2d 221) (1999).

dence authorized the court to find that the gaps were caused by the manner in which Daker had recorded the conversation, we find no error in its admission in evidence.

4. Daker contends that the trial court erred in admitting Spencer's testimony concerning Smith's October 20 exclamation.

This testimony was admitted in evidence under the "necessity" exception to the hearsay rule,[6] which applies to out-of-court statements not within any other recognized hearsay exception.[7] Under this exception, hearsay may be admitted if there is both a necessity for its admission and a circumstantial guaranty of its trustworthiness.[8]

(a) Daker first argues that Smith's hearsay statement lacked the necessary guaranty of trustworthiness. There is no merit in this argument, because the statement qualifies as a spontaneous reaction to a startling event.[9] Therefore, the statement was admissible under the long-recognized "spontaneous declaration" exception to the hearsay rule.[10] Statements admissible under a firmly rooted hearsay exception carry sufficient indicia of reliability.[11]

(b) Daker next complains of the court's admission of Spencer's testimony that Smith had died.

When Spencer was asked to explain why Smith did not appear as a witness, the defense objected to testimonial or documentary evidence that Smith had been killed. The prosecution then argued that because her hearsay statement had been admitted under the necessity exception to the hearsay rule, the State was required to account for her unavailability, and a certified copy of the death certificate was the preferable mode of proof. Defense counsel offered to stipulate that Smith was unavailable, because proof of her death would prove extremely prejudicial to Daker due to the resulting inference that he was the perpetrator of the homicide. The court overruled Daker's objection and allowed Spencer to testify that Smith was dead.

Because Smith's statement was admissible under the spontaneous declaration exception to the hearsay rule, there was no need to prove her unavailability or her death. But inasmuch as the State was not allowed to present evidence concerning the circumstances surrounding her death or the investigation of Daker as a suspect, we find that the admission of this evidence was not so harmful as to constitute reversible error.

---

[6] OCGA § 24-3-1 (b).
[7] See Green, Ga. Law of Evidence (5th ed. 1999), § 225, p. 453.
[8] See *Higgs v. State*, 256 Ga. 606, 607 (3) (351 SE2d 448) (1987).
[9] See *House v. State*, 252 Ga. 409, 410-411 (2) (314 SE2d 195) (1984).
[10] Id.; OCGA § 24-3-3.
[11] *Idaho v. Wright*, 497 U. S. 805, 815 (110 SC 3139, 111 LE2d 638) (1990).

5. Daker contends that the court erred in sustaining the State's objection when defense counsel asked Spencer whether she had attempted to seduce other teenage boys. Daker claims that the testimony sought to be elicited was material, because part of his defense was that Spencer had accused him of stalking to cover up the fact that she was seducing him and other boys his age.

Although Daker was not allowed to ask the question, he did introduce evidence of Spencer's romantic interest in or involvement with two other college-age men. It thus appears that the court would have allowed Daker to present evidence of attempts by Spencer to seduce even younger men, if he had attempted to do so. We, therefore, do not find that Daker was harmed by the limitation imposed on his cross-examination of the witness.

6. Daker contends that the court erred in admitting in evidence two compositions written by him and found by police in a trash can in his bedroom.

During the investigation into Smith's death, Daker's residence was searched and the compositions were found. In them, he admitted that he despised Spencer because of what she had done to him and wanted to destroy her without actually killing her.

Daker argues that the compositions were written at the direction of his psychiatrist and were, therefore, inadmissible under OCGA § 24-9-21 (5), which creates an evidentiary privilege for "[c]ommunications between psychiatrist and patient." Because the compositions were found in a trash can with no showing by Daker that they were ever given to his psychiatrist, the court was authorized to find that they had not been and were not intended to be communications between psychiatrist and patient.

7. Daker contends that the court erred in sustaining the State's objection to evidence showing that in April 1995 he decided to be tested for AIDS. Daker argues that this evidence was relevant to corroborate his claim that he and Spencer were having sexual relations.

But Daker's submission to AIDS testing was of questionable probative value as to the identity of any sexual partner. The trial court did not abuse its discretion in refusing to admit this evidence.

8. Daker contends that the court erred in refusing to investigate whether Spencer had committed perjury and whether counsel for the State had suborned perjury.

Outside the presence of the jury, the prosecuting attorney recalled Spencer to the stand and elicited testimony that Daker had told her that he had devised a plan for a "perfect murder" through which he could kill her and her daughter without getting caught. On cross-examination, Spencer testified that Daker made this statement in summer 1995 and that she had informed the prosecuting attorney, other members of the district attorney's office, and various police

officers of the statement before trial.

Defense counsel later represented to the court that the prosecuting attorney had shaken her head negatively when Spencer testified as to the time she had informed counsel of Daker's statement. Although defense counsel withdrew the charge that the prosecutor had suborned perjury, he claimed that counsel for the State was nonetheless under an ethical obligation to inform the defense if it became aware that Spencer had committed perjury. After a prolonged discussion on this issue failed to produce a resolution, the prosecutor elected not to recall Spencer to testify. The court indicated that it intended to conduct an independent investigation of the matter, but later declined to do so and ruled that the defense could "take whatever steps" it deemed advisable. The matter was not pursued further.

As Daker withdrew his subornation of perjury claim against the State at trial, the question on appeal is whether the trial court should have conducted its own investigation as to whether Spencer committed perjury. Because Daker cites no authority in support of his argument that such an investigation was demanded, and because there were numerous witnesses whom Daker could have called to establish his claim that Spencer committed perjury, we find no error by the trial court. Moreover, even if the testimony given by Spencer was false, it was not presented to the jury.

9. We will not consider Daker's objections to the court's admission of testimony relating to the psychological profile of a stalker or his objection to the court's refusal to allow defense counsel to ask a prosecution witness whether Spencer had provided him with prescription drugs, as the objections raised by Daker on appeal are based on grounds which were not raised at trial.[12]

10. Contrary to arguments advanced by Daker on appeal, the record shows that defense counsel was allowed to ask Spencer whether she had ever provided Daker with prescription drugs.

11. Although the trial court refused to allow defense counsel to ask a defense witness whether Spencer was taking the antidepressant Prozac, Spencer had earlier testified that she was taking antidepressants. Daker sought to establish that Spencer was taking Prozac to prove that her thinking was delusional. Because Daker has not shown that Prozac is prescribed for or results in delusional thought, he has not established that the trial court abused its discretion in sustaining the State's objection to the question posed.

12. The court did not abuse its discretion by refusing to allow defense counsel to ask Spencer whether she would have been suffer-

---

[12] *Williams v. State*, 191 Ga. App. 217, 218 (2) (381 SE2d 399) (1989).

ing from paranoid delusions if Daker had not been stalking her. This was a proper subject of expert opinion. Moreover, an affirmative answer to the question would not have aided the defense.

13. During defense counsel's cross-examination of Spencer, he elicited a concession that she had lied when, during a taped telephone conversation with Daker, she "swore to God" that the conversation was not being recorded. In response to additional questioning, Spencer then acknowledged that she had also "sworn to God" when she began her trial testimony. Defense counsel thereupon stated that Spencer thus did not mind lying while swearing to God. We do not find any harmful abuse of discretion by the court in then instructing counsel to proceed to a different subject. Although the defense was not permitted to elicit an explanation from Spencer as to why she would swear falsely to Daker but not under oath, the fact that she had invoked the Lord's name while making a false statement was shown.

14. We find no merit in Daker's contention that the court erred in granting the State's motion in limine to prohibit the defense from injecting Spencer's character in evidence. The motion was granted provisionally, was thus subject to modification, and was in fact modified at trial.[13]

15. Daker's contention that the trial court erred in admitting an affidavit executed by his psychiatrist has not been preserved for appeal, as Daker's objection to introduction of this evidence was not timely.[14]

16. Daker has waived his contention that the court erred in admitting audiotapes of telephone conversations between him and Spencer on October 13 and 14, 1995, as the court reserved ruling on his objection to this evidence and a final ruling was never invoked.[15]

17. Daker's contention that the court erred in admitting testimony concerning a conversation between law enforcement officers which led to Daker's arrest presents nothing for review. His objection was based on the State's failure to lay a proper foundation for the testimony, and defense counsel did not state what the proper foundation was.[16]

18. Daker's complaints concerning improper comments made by the prosecuting attorney during closing arguments have been waived by his failure to object at trial.[17]

19. Although Daker complains that the State was allowed to use

---

[13] See Division 5, supra.

[14] *Anthony v. State*, 236 Ga. App. 257, 259 (511 SE2d 612) (1999).

[15] *Hubbard v. State*, 239 Ga. App. 632, 635 (3) (521 SE2d 678) (1999).

[16] *Milford v. State*, 178 Ga. App. 792, 793 (1) (344 SE2d 505) (1986).

[17] *Ward v. State*, 238 Ga. App. 540, 542 (2) (519 SE2d 304) (1999).

certain portions of a presentence investigative report to enhance his sentence, the record shows that the trial court sustained his objection to use of the report in this manner.

20. We are unable to review Daker's contention that the court erred in unsealing the presentence investigative report. The court unsealed the report based on written waivers signed by Daker. On appeal, Daker argues that the waivers did not authorize the unsealing of the report. But he has not shown where in the record the waivers can be found.[18] Therefore, this enumeration will not be considered.

21. In Case No. A00A0401, Daker filed two motions to recuse with accompanying affidavits. In the motions, he sought recusal of the judges who presided at arraignment and trial based on allegations that the proceedings were conducted in an unfair manner and that no order had been entered on his motion for new trial. The latter allegation was unfounded, as the trial judge did enter an order denying Daker's motion for new trial shortly before the first motion to recuse was filed. Because the trial judge was authorized to find that the motions to recuse were untimely and that the affidavits were legally insufficient,[19] both motions were subject to denial on their face.

22. In Case No. A00A0402, Daker is appealing an order denying his motion for sentence modification.

Daker was convicted of two counts of aggravated stalking because of his nonconsensual contacts with Spencer on two separate dates. Daker argues that he was chargeable with no more than one count of aggravated stalking because this was all part of one course of conduct. In pertinent part, OCGA § 16-5-91 (a) states that "[a] person commits the offense of aggravated stalking when such person, in violation of a . . . condition of pretrial release, . . . contacts another person . . . without the consent of the other person for the purpose of harassing and intimidating the other person." OCGA § 16-5-90 (a) provides that the term "harassing and intimidating" means:

> a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

---

[18] See Court of Appeals Rule 27 (c) (3) (i).

[19] See *Wellons v. State*, 266 Ga. 77, 88 (19) (463 SE2d 868) (1995) (timeliness of motion); *In re Phillips*, 225 Ga. App. 478, 480-481 (2) (484 SE2d 254) (1997) (legal sufficiency of affidavit).

Here, the defendant engaged in a course of conduct as described in OCGA § 16-5-90 (a) which culminated in unauthorized contacts between him and Spencer on two separate dates. Consequently, his conviction on two separate counts of aggravated stalking under OCGA § 16-5-91 (a) was authorized.[20] The record does not support Daker's claim that a hearing on his motion for sentence modification was held in his absence.

*Judgments affirmed. All division judges concur.*

DECIDED APRIL 11, 2000 —
RECONSIDERATION DENIED MAY 10, 2000 — 

Waseem Daker, *pro se.*

Patrick H. Head, *District Attorney,* Debra H. Bernes, W. Thomas Weathers III, Maria B. Golick, *Assistant District Attorneys,* for appellee.

---

[20] See *Fly v. State*, 229 Ga. App. 374, 375 (1) (494 SE2d 95) (1997); *Durant v. State*, 222 Ga. App. 872, 873 (1) (476 SE2d 641) (1996).