### A06A1406. HILL v. CLAYTON COUNTY BOARD OF COMMISSIONERS.
#### (640 SE2d 638)

BERNES, Judge.

This dispute between the Clayton County Board of Commissioners and Victor Hill, the Clayton County Sheriff, arose after the Sheriff caused a number of county-owned motor vehicles assigned to his use to be repainted and remarked, and also caused portions of the Sheriff's offices within a county-owned facility to be repainted, all without the Board's approval. The Board sued the Sheriff seeking, among other things, a declaration that any modifications to the motor vehicles and the facility were subject to the Board's prior approval. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment to the Board. The Sheriff also filed a motion for recusal, which the trial court denied. For the reasons set forth below, we affirm the trial court's denial of the Sheriff's motion for recusal, and we affirm in part and reverse in part the trial court's grant of summary judgment to the Board and denial of summary judgment to Hill.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (1) (405 SE2d 474) (1991). "[O]n appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

The parties stipulated to the following facts. Clayton County owned the motor vehicles that were assigned to the Sheriff for his exclusive use. The Sheriff contracted with a third party to repaint between 55 and 60 of these vehicles from a brown to a black color scheme. The vehicles were also marked with new decals that included the name of the Sheriff. The new decals and the old decals conformed to the requirements of OCGA § 40-8-91, which sets the criteria for marking official vehicles used for traffic enforcement. The vehicles were not repainted and remarked in connection with a change in use,

which continued to be for police patrol, traffic enforcement, and emergency call response.

The Sheriff used "forfeited drug funds" distributed to his office through federal agencies to pay for the cost of painting the vehicles. Monies to maintain, repair, paint, or alter motor vehicles were not appropriated in the Sheriff's budget. The Sheriff did not request or receive approval from the Board or its finance director to paint the vehicles.

Clayton County also owns a facility known as the Harold R. Banke Justice Center. The Sheriff's offices and the jail are located in the Justice Center. Aramark Facility Services, Inc. provides maintenance for the Sheriff's offices and the jail pursuant to a contract negotiated by the Board. Pursuant to the Sheriff's request, Aramark painted several walls within the Sheriff's offices a shade of beige which was different than the original off-white color, and one wall, which the Sheriff had designated a "wall of honor," was painted blue. The Sheriff did not ask the Board's permission to repaint the walls or to change their color.

The parties also stipulated that in the future the Sheriff may wish to make other changes to the vehicles assigned to his office and to make other changes and structural modifications to the Sheriff's offices and the jail. The Board contended that it must approve these future changes, and the Sheriff disagreed.

1. (a) In granting summary judgment to the Board, the trial court declared that "[t]he sheriff did not have independent legal authority to make or cause to make the modifications that were undertaken here, specifically the repainting and remarking of marked vehicles, without the consent and approval of the [Board]. . . ." Further, the trial court concluded that "[t]he [S]heriff is required to obtain the approval of the [Board] prior to undertaking any changes to the motor vehicles owned by Clayton County and assigned to the [S]heriff like the changes made herein."

We disagree with the trial court's conclusions that the Sheriff had no independent authority to repaint and remark the vehicles assigned to his exclusive use, and that the Sheriff is required to obtain Board approval for like changes. Hill, as the Sheriff of Clayton County, "is an elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission." *Bd. of Commrs. of Randolph County v. Wilson*, 260 Ga. 482 (396 SE2d 903) (1990). "The sheriff's duties include those that necessarily appertain to his office, such as the power to make arrests, to maintain the peace and to enforce the law." (Citation, punctuation and footnote omitted.) *Brown v. Dorsey*, 276 Ga. App. 851, 855 (1) (625 SE2d 16) (2005). The Board sets the Sheriff's budget but "may not dictate to the sheriff how that budget will be spent in the exercise of

his duties." *Chaffin v. Calhoun*, 262 Ga. 202, 203 (415 SE2d 906) (1992). "[T]he Constitution has made the sheriff independent from the County, notwithstanding the designation of the sheriff as a county officer." (Punctuation and footnote omitted.) *Brown*, 276 Ga. App. at 856 (1). See *Grech v. Clayton County*, 335 F3d 1326, 1347 (V) (A) (11th Cir. 2003) (Board has no control over the Sheriff's law enforcement function) (applying Georgia law).

The Board does "have the control of all property belonging to the county." OCGA § 36-9-2. See also OCGA § 36-5-22.1 (a) (1). However, the Board's control over county property is limited in the context of motor vehicles and equipment owned by a county but assigned to a sheriff for his exclusive use. See *Keener v. Kimble*, 170 Ga. App. 674, 675 (1) (317 SE2d 900) (1984) (the act requiring county to provide supplies and equipment to the sheriff's department did not give the county commissioners control over the use of the equipment); *Clayton v. Taylor*, 223 Ga. 346, 348-349 (155 SE2d 387) (1967). In *Taylor*, a local act required the Board of County Commissioners of Jenkins County to pay for two police vehicles for the county sheriff's office. Id. at 346. When the act went into effect, the board purchased two police vehicles and caused them to be marked "Jenkins County Sheriff Department." Id. The board then refused the sheriff's request to unmark one of the vehicles so that it could be used for investigation for other than traffic cases. Id. at 347. The sheriff brought a declaratory judgment action to determine, among other things, whether he had the right to remove the markings placed on the vehicle. Id. The trial court held that he did, and our Supreme Court affirmed on appeal, concluding that "the [sheriff] has the right to the exclusive use of said vehicles in performing official acts as sheriff, and the right to remove the signs from one of the vehicles." Id. at 349. The Court reasoned that

> [t]he Act . . . requiring the county to furnish [the sheriff] necessary equipment, including two police vehicles, does not give the county commissioners control over the equipment thus furnished. . . . It is the right of the [Sheriff] to determine whether both vehicles will be used in patrolling traffic, or whether the duties of his office may be more competently performed by having one marked vehicle, that may be used in connection with traffic violations, and one unmarked vehicle, which may be used in making investigations.

Id.

Here, the Board provided vehicles for the Sheriff's exclusive use as authorized by local act. See Ga. L. 1952, p. 2654. According to the Sheriff's affidavit, the vehicles were repainted and remarked to make

it more plain that they were law enforcement vehicles. The Sheriff averred that before the vehicles were repainted and remarked they did not have the appearance of law enforcement vehicles but of code enforcement vehicles or county administrative vehicles. The Sheriff further averred that a more visible police presence would aid in the discharge of his duties. Thus, as in *Taylor*, the Sheriff changed the vehicles' appearance for reasons related to his law enforcement duties. Although the change in the vehicles' appearance was not made in conjunction with a proposed change in their use, which remained police patrol, traffic enforcement, and emergency call response, the Sheriff was entitled to determine that the law enforcement functions to which the vehicles were assigned would be more competently performed if the vehicles were repainted and remarked.

The Board argues that *Taylor* is not controlling because the alteration of one vehicle and not many was at issue, because the sheriff in *Taylor* did not propose to add his name to a police vehicle, and because *Taylor* was decided before *Wolfe v. Huff*, 232 Ga. 44 (205 SE2d 254) (1974), and *Wheeler v. DeKalb County*, 249 Ga. 678 (292 SE2d 855) (1982). The Board fails to distinguish *Taylor* on these points. Nothing in the Supreme Court's analysis in *Taylor* indicates that the number of cars altered was legally relevant. As to the inclusion of the Sheriff's name on the remarked vehicles, we do not comment upon the wisdom of such a change but note that the parties stipulated that the vehicles complied with OCGA § 40-8-91 both before and after the vehicles were altered, and the Board points to no authority showing that the vehicles were improperly marked. See generally OCGA § 15-16-54 (symbol of office is within Sheriff's discretion). *Wolfe* and *Wheeler* are inapplicable because they address county governing authorities' power to allocate the use of county property, whereas in this case the vehicles at issue had already been allocated to the Sheriff's exclusive use. *Wolfe*, 232 Ga. at 45-46; *Wheeler*, 249 Ga. at 682-684 (2).

The Board also points out that the local act providing that the Sheriff may be allowed automobiles for his exclusive use contemplates that the county will furnish gasoline, oil, and repairs for such automobiles. Ga. L. 1952, p. 2654. However, it does not follow that the Board's responsibility to pay for maintenance-related expenses gives the Board control over the appearance of law enforcement vehicles assigned to the Sheriff's exclusive use.

Based on the foregoing, we conclude that *Taylor* applies here. Subject to OCGA § 40-8-91 and other applicable law governing the marking of law enforcement vehicles, the Sheriff had the independent authority to repaint and remark the vehicles assigned to his exclusive use. The trial court erred in ruling otherwise.

(b) The trial court also concluded that the Sheriff did not have the independent legal authority to have the vehicle alterations performed by parties other than the County's fleet maintenance department. But the Sheriff necessarily had the power to make purchases from third parties in the pursuit of his law enforcement duties, in this case the purchase of painting and remarking services. See, e.g., OCGA § 42-4-4 (a) (2) (sheriff must furnish persons confined in the jail with medical aid, heat, and blankets); *Griffies v. Coweta County*, 272 Ga. 506, 508 (1) (530 SE2d 718) (2000) (county commission did not have the unilateral authority to determine that the superior court clerk's purchase of bottled water was not in the exercise of her duties).

The Board further argues that the trial court's determination that the Sheriff did not have the authority to have vehicle alterations performed by third parties is nevertheless correct because the Sheriff could not pay for the alterations without seeking an amendment to the Sheriff's budget. We disagree. It is undisputed that the vehicle alterations were not paid for out of the Sheriff's budget, but out of forfeited drug funds distributed to the Sheriff by federal agencies. The Board refers us to local legislation providing that forfeited monies shall be received by the Sheriff and held as public monies for the sole use of the county and then periodically paid over to the Board. Ga. L. 1949, p. 1911. The Board contends that the forfeited funds must therefore be accounted for as public money and the funds' expenditure approved by the Board through the budgeting process. However, the local legislation must yield to the general law requiring that funds forfeited under federal law be utilized by the law enforcement agency to which it is transferred. See OCGA § 16-13-48.1; *Chatham County v. Kiley*, 249 Ga. 110, 111 (1) (288 SE2d 551) (1982) ("when there is a conflict between a special act and a general act, the general act must prevail"). Inasmuch as the Sheriff is the only authorized user of the forfeited funds, we see no basis for requiring the Board to allocate these funds to the Sheriff through the budgeting process.

2. The trial court also declared that "[t]he [S]heriff did not have independent legal authority to make material alterations to the suite of offices used by him and to the jail facilities without the consent and approval of the [Board]." Further, the trial court found that "[t]he [S]heriff is required to obtain the approval of the [Board] prior to making material alterations and structural modifications of the [S]heriff's suite of offices and jail facilities located within the [Justice Center]." The parties stipulated that "structural modification" was defined as "the destruction or modification of the permanent building structure or any fixture permanently attached thereto." The parties also agreed that "material alteration" included color changes. According to the Sheriff, he changed the color of the walls in his office to

signal change to the public and would-be criminals that a new sheriff had been elected, to aid in differentiating his offices from the rest of the courthouse, to help the public locate his offices, and to raise morale in the case of the wall of honor. He also explained that the walls "were in need of freshening."

We conclude that the trial court ruled correctly insofar as the Board's right to oversee modifications to the Sheriff's offices and the jail within the Justice Center. The Sheriff shares this facility with the superior, state, and magistrate courts of Clayton County, as well as the clerks of those courts, the solicitor-general, and the district attorney. Unlike the vehicles considered above, the Justice Center has not been assigned to the Sheriff's exclusive use. Furthermore, "county buildings shall be erected and kept in order and repaired at the expense of the county *under the direction of the county governing authority* which is authorized to make all necessary contracts for that purpose." (Emphasis supplied.) OCGA § 36-9-5 (b). By necessary implication, if not by express provision, material alterations and structural changes to a county building such as the Justice Center must be made at the Board's direction and not on the Sheriff's independent initiative.

3. The Sheriff also claims that the trial court erred in denying his motion for recusal of all the judges within the Clayton Judicial Circuit. We disagree. We review the trial court's ruling on a motion to recuse for abuse of discretion. *Vaughn v. State*, 247 Ga. App. 368, 370 (2) (543 SE2d 429) (2000).

The trial court concluded that the Sheriff's motion to recuse was untimely and that the accompanying affidavit was legally insufficient.

> Motions to recuse must be timely and made as soon as the facts demonstrating the basis for disqualification become known. Uniform Superior Court Rule 25.1 requires that such motions must be made "not later than five (5) days after the affiant first learned of the alleged grounds for disqualification," unless good cause is shown. . . . Absent the filing of a timely recusal motion accompanied by a legally sufficient affidavit, such motion is subject to denial on its face.

(Footnote omitted.) *Brown v. State*, 275 Ga. App. 281, 292 (6) (620 SE2d 394) (2005). Additionally, Uniform Superior Court Rule 25.2 requires that "[t]he affidavit shall clearly state the facts and reasons for the belief that bias or prejudice exists, being definite and specific as to time, place, persons and circumstances. . . ." Bare conclusions and opinions are not legally sufficient. Id.

Here, there is nothing in the Sheriff's motion and accompanying affidavit, which were filed approximately two months after the onset of litigation, that would not have been apparent to the Sheriff when the case was initially filed. Further, the Sheriff's affidavit is not specific as to time, place, persons, and circumstances. Rather, the affidavit states generally that the Sheriff, the Board, and the Board's members have unspecified "personal and professional relationships" with the superior court judges of the Clayton Judicial Circuit. The Sheriff merely speculates that the judges of the Clayton Judicial Circuit may have personal knowledge of the facts and issues. Accordingly, the trial court correctly concluded that the motion for recusal was untimely and legally insufficient. See *Daker v. State*, 243 Ga. App. 848, 855 (21) (533 SE2d 393) (2000). Further, we find no actual or apparent conflict of interest which might mandate recusal notwithstanding the timeliness of the motion. Compare *Ga. Transmission Corp. v. Dixon*, 267 Ga. App. 575, 576-577 (1) (600 SE2d 381) (2004) (fellow superior court judge was a party to the case before the trial court). Although the superior court shared the Justice Center with the Sheriff, the alterations to the Justice Center at issue only pertained to the portions of the building occupied by the Sheriff. We find no error.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 29, 2006 —
RECONSIDERATIONS DENIED DECEMBER 15, 2006 —

*Mark D. Oldenburg, Gary V. Stiner, Jr.*, for appellant.
*Hancock & Palmer, Jack R. Hancock*, for appellee.
*Walker, Hulbert, Gray & Byrd, Charles W. Byrd*, amicus curiae.