## A08A0713. LAWSON v. LINCOLN COUNTY.
(664 SE2d 900)

ADAMS, Judge.

Lincoln County petitioned for declaratory judgment seeking to compel Gerald Lawson, sheriff of Lincoln County, to turn over funds that the sheriff's department receives under a contract for telephone services at the county jail and from the sale of pre-paid phone cards

to inmates. The Superior Court of Lincoln County granted the county relief and ordered the sheriff to turn over the money. Lawson now appeals.[1]

The facts are not in dispute. In 2003, the former sheriff, Edwin Bentley, entered into a contract with Evercom Systems, Inc. to provide telephone services to inmates of the Lincoln County jail. Under the contract, inmates could make collect calls, and the recipients paid a toll to Evercom. Evercom agreed to pay the sheriff a commission of 38 percent of the revenue derived from the phone calls. The commissions amount to upwards of $15,000 or perhaps $16,000 per year. Sheriff Bentley turned over the commissions he received from Evercom to Lincoln County's general fund. The county's general fund is used, in part, to pay for the care of the inmates and for the expenses for operation and maintenance of the jail. The county included the telephone revenue as a revenue item in the operating budget, and the anticipated revenue was used to calculate and partially fund the sheriff's budget.

Lawson took office in 2005, and for a period of time continued Bentley's practice of turning over the telephone commission to the county's general fund. In January 2006, Lawson and Evercom amended the original contract to allow the sheriff to purchase pre-paid calling cards to re-sell to inmates. And at some point in early 2006, Lawson stopped turning over the commissions to Lincoln County and began to deposit them into a bank account that is under his sole and exclusive control. He used some of the funds to purchase more pre-paid calling cards to sell to inmates for a profit and used the rest of the money for jail operating expenses. Revenue from the sale of calling cards was also deposited in the account. It is undisputed that the funds at issue are not being used for the sheriff's compensation; there is no allegation of improper handling of the funds; and the accounts have been available for access to the county for auditing and budgeting. The telephones themselves belong to the vendor.

The Lincoln County Board of Commissioners demanded that Sheriff Lawson turn over the money to the county's general fund, and Lawson refused. Lincoln County brought suit, seeking a declaration that Lawson could not retain the money and spend it outside of the county's budgeting process. The trial court granted the county's request holding that "it is within the authority of the county commission to require the sheriff turn over all funds collected from both contracts with Evercom Systems, Inc."

---

[1] This case was initially filed in the Supreme Court of Georgia but transferred by that Court to the Court of Appeals.

The Constitution of the State of Georgia designates the sheriff as a "county officer" but grants the state legislature the exclusive authority to establish the sheriff's "qualifications, powers, and duties." Ga. Const. of 1983, Art. IX, Sec. I, Par. III (a)-(b). Interpreting this provision, the Supreme Court of Georgia has stated that the sheriff "is an elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission." (Citations and footnote omitted.) *Bd. of Commrs. of Randolph County v. Wilson*, 260 Ga. 482 (396 SE2d 903) (1990).

> His statutory duties are defined in OCGA § 15-16-10, and include not only the enumerated duties such as maintaining the jail and serving warrants, but also those duties that "necessarily appertain to his office," such as the power to make arrests, to maintain the peace and to enforce the law. OCGA § 15-16-10 (a) (8); *Wolfe v. Huff*, 232 Ga. 44 (205 SE2d 254) (1974).

*Chaffin v. Calhoun*, 262 Ga. 202, 203 (415 SE2d 906) (1992). The Constitution also provides that the legislative power of the county commissioners "shall not be construed to extend to . . . [a]ction affecting any elective county office, the salaries thereof, or the personnel thereof. . . ." Ga. Const. of 1983, Art. IX, Sec. II, Par. I (c) (1). Finally, "although the county commission has the power and the duty to issue a budget, the county commission may not dictate to the sheriff how that budget will be spent in the exercise of his duties." *Chaffin*, 262 Ga. at 203. Thus, Georgia's Constitution has created the sheriff's office as a separate entity, the independence of which is protected from certain forms of encroachment by the county government.

The legislature, however, has given the county "original and exclusive jurisdiction" over certain matters, including (1) "The directing and controlling of all the property of the county, according to law, as the governing authority deems expedient"; and (2) "The examining and auditing of the accounts of all officers having the care, management, keeping, collection, or disbursement of money belonging to the county or appropriated for its use and benefit and the settling of the same." OCGA § 36-5-22.1 (a) (1), (7).[2] See also *Bd. of Commrs. of Dougherty County v. Saba*, 278 Ga. 176, 177 (1) (598 SE2d 437) (2004) ("sheriff's budget and accounts are subject to the

---

[2] The enabling legislation repeals all conflicting laws. Ga. L. 1987, p. 1051, § 4; Ga. L. 1987, p. 1482, §§ 8, 10.

authority of the county commission") (citation omitted).[3] And "[t]he law grants to a county commission a broad discretion to exercise control over public property, and dictates that this discretion will not be interfered with by the courts absent clear abuse." (Citations omitted.) *Dickey v. Storey*, 262 Ga. 452, 454 (1) (423 SE2d 650) (1992). A county also has the duty to maintain and furnish the jail, OCGA § 36-9-5 (a) and (b), and "to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention." OCGA § 42-5-2 (a).[4] In order to meet their duty, the county commissioners have "a duty to adopt a budget making reasonable and adequate provision for the personnel and equipment necessary to enable the sheriff to perform his duties of enforcing the law and preserving the peace." *Wolfe v. Huff*, 233 Ga. 162, 164 (210 SE2d 699) (1974), cited with approval in *Chaffin*, 262 Ga. at 203.

The tension between the county's and the sheriff's authority can be seen in *Saba*. In that case, the county had attempted to cut the sheriff's funding for specific positions within the sheriff's department. *Saba*, 278 Ga. at 177. The Court noted that while the Board of Commissioners can change the amount of money budgeted for the sheriff's department, the decision of how to spend the funds allocated to the department falls solely to the sheriff. Id. See also *Chaffin*, 262 Ga. at 203 (it was within commissioners' authority to remove 47 percent of the sheriff's budget).

The county's authority is also limited in the context of "equipment owned by a county but assigned to a sheriff for his exclusive use." *Hill v. Clayton County Bd. of Commrs.*, 283 Ga. App. 15, 17 (1) (a) (640 SE2d 638) (2006). See also *Keener v. Kimble*, 170 Ga. App. 674, 675 (1) (317 SE2d 900) (1984). In *Hill*, a county challenged the sheriff's decision to use forfeited drug money (allocated to the sheriff by federal statute) to repaint the vehicles and offices of the sheriff's department. This Court held that "the Sheriff necessarily had the power to make purchases from third parties in the pursuit of his law enforcement duties." *Hill*, 283 Ga. App. at 19 (1) (b). The Court cited OCGA § 42-4-4 (a) (2), which requires the sheriff to furnish prisoners with basic necessities. This Court concluded that the sheriff could contract with third parties to paint the vehicles, but he could not unilaterally decide to paint his offices within the county's office

---

[3] See also OCGA § 36-9-2, which provides:
The county governing authority shall have the control of all property belonging to the county and may, by order entered on its minutes, direct the disposal of any real property which may lawfully be disposed of and make and execute good and sufficient title thereof on behalf of the county.

[4] See also Ga. L. 1965 (Local and Special Acts and Resolutions, Vol. II), p. 2488 ("necessary operating expenses" of the sheriff's department shall be paid by the county).

building because of statutes granting authority over county buildings to the commissioners. *Hill*, 283 Ga. App. at 20.

Although instructive, *Saba* and *Hill* are distinguishable. The present case does not involve a dispute over how the sheriff can spend funds allocated by the county as in *Saba*, nor does it involve a dispute over use of property designated for exclusive use by the sheriff. This case also does not turn on the simple question of whether the sheriff may maintain an account. Rather, this case involves whether a sheriff may use county property, facilities, or other resources to earn revenue independent from the county budgeting process and keep that revenue for use of the sheriff's department. We hold that a sheriff does not have this authority.

First, revenue generated using county property, facilities, or other resources is itself county property and therefore subject to county authority under OCGA § 36-5-22.1. Although the phones themselves may belong to the vendor, the contracts would not exist without the presence of the jail and the inmates within. More specifically, the telephone contract provides that in exchange for the services to be provided by Evercom, Evercom is granted "the exclusive right and license to install and maintain" the system "within all pre-existing and future jail and/or detention facilities," and the sheriff "covenants and agrees to make [those facilities] available to Evercom for complete installation and operation of the Equipment." Thus, the contract depends on the existence of the jail facilities, which are county property.

Second, we find no legislative authority for such a far-reaching power, and Lawson has not cited any. Third, none of the authority cited by Lawson authorizes such a power. In *Hill*, the funds at issue were " 'forfeited drug funds' distributed to [the sheriff's] office through federal agencies." *Hill*, 283 Ga. App. at 16. Accordingly, the county's authority and its power under local legislation had to "yield to the general law requiring that funds forfeited under federal law be utilized by the law enforcement agency to which it is transferred." Id. at 19 (1) (b). Although *Hill* makes clear that sheriffs have authority to "make purchases from third parties in the pursuit of [their] law enforcement duties," id., nothing in *Hill* suggests that sheriffs may earn and retain revenue from such contracts. Fourth, although a sheriff is authorized by the legislature to collect certain fees, such as fees for transporting prisoners, summoning witnesses, attending court, etc., the relevant Code section provides that "all such fees shall be turned over to the county treasurer or fiscal officer of the county." OCGA § 15-16-21 (a).

We also do not find persuasive the fact that Lawson maintains other bank accounts for certain uses, including accounts for revenues from the jail commissary, charitable donations, and rewards

for fugitives.[5] This case does not involve those accounts and the simple fact that Lawson maintains those accounts does not provide legal support to his asserted authority to earn and keep telephone contract revenue.

To allow the sheriff to use county property or facilities to earn and keep revenue independent from the county's budgeting process would, in the extreme, undermine the county's broad discretion to exercise control over public property. We understand the argument that the sheriff may be in a better position to manage the inmate telephone contract and telephone use. But matters of this kind should be worked out between the sheriff and the county.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 8, 2008 — 

*Tucker, Everitt, Long, Brewton & Lanier, John B. Long, Troy A. Lanier,* for appellant.
*O'Quinn & Cronin, Michael A. O'Quinn,* for appellee.
*Walker, Hulbert, Gray & Byrd, Charles W. Byrd,* amicus curiae.

---

[5] We note that some of these accounts are funded with donations, and, with regard to the revenues from the jail commissary, the county asserts that the county and the sheriff have agreed to handle the jail commissary funds under the terms of a local policy.