S92P1347. WALKER v. THE STATE.
(424 SE2d 782)

BENHAM, Justice.

This is a case in which a death sentence has been imposed.[1]

On August 31, 1988, a convenience store in Columbus, Georgia, was robbed and its clerk shot to death with a .22 caliber gun.[2] A store cash register taken in the robbery was recovered in a garbage dumpster. Store surveillance cameras placed outside and inside the store were connected to a time-lapse video recorder producing a series of still pictures, cycled between the cameras inside and outside the store. The shooting does not appear, but the pictures do show a man wearing a shower cap first standing in front of the register in the presence of the clerk, and later standing behind the register alone.

Three men were arrested for the crime and, although one of the three confessed, all three were later released: the confessor repudiated his confession, claiming he had confessed to obtain the reward money so he could buy drugs. An informant later told the police that appel-

---

[1] The defendant was arrested several months after the crime occurred. He was indicted February 6, 1989, and the case was tried January 28 through February 10, 1991. A motion for new trial was filed March 10, 1991, and amended February 16, 1992. The motion was denied, after hearing, on April 20, 1992. The case was orally argued in this court on October 14, 1992.

[2] The weapon was never recovered and, thus, never precisely identified.

lant was the man in the videotape and that appellant admitted killing the clerk and stealing the cash register. After his arrest, Walker at first denied being in the store. When he was shown a picture of himself standing in front of the counter, he admitted being in the store but denied doing anything except buying a quart of oil. However, after viewing another picture showing him standing behind the counter, he stated that while two men held the clerk in the back of the store and tried to force the clerk to divulge the location of the store's safe, he ran behind the counter and stole a pack of cigarettes. Still later, after learning that Bobby Buck had told police he had loaned a .22 caliber pistol to appellant, Walker once again changed his story, claiming that the two robbers ordered him to pick up the register and that he did so momentarily, then set it down and left. He said the robbers were Bobby Buck and his brother, although he had earlier said one of the robbers was a man named "Lamar."

1. The evidence is sufficient to meet the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Prince v. State*, 257 Ga. 84, 85 (355 SE2d 424) (1987).

2. In his first enumeration of error, Walker contends the trial court erred by refusing to excuse a prospective juror who was good friends with the victim's family and with the district attorney, and who had experienced a loss similar to that suffered by the victim's family.

The juror testified that his father-in-law was murdered in a grocery-store holdup years ago, that the killers were never apprehended, and that the crime still "weighs heavily" on his mind. In his capacity as Director of the Department of Community and Economic Development for Muscogee County, the juror has worked with the trial judge for "many years." He knows everyone in the district attorney's office and considers himself a "very close" friend of the district attorney. He has also socialized "many times" with the victim's family, describing the victim's father as "a good friend of a very good friend of mine."

The juror conceded that his close friendship with the district attorney would incline him toward the state's case. Moreover, he described himself as having "a lot of empathy" for the victim's family. Because of his friendship with them and his personal experience with a similar crime, he said he

> couldn't sit here and say that it would not influence me somewhat. I would have to admit that because I've seen what it's done to my wife's family and the [victim's family].

The juror also testified that, because of his friendship with many law enforcement officers, he would tend to believe a police officer's testi-

mony over a lay person and would be "prone" to believe a law officer rather than a criminal defendant.

After appellant elicited the foregoing, the court asked the juror if he could lay aside his "feelings for the victim's family" and his "acquaintances with the people in the District Attorney's office" and decide the case based on the evidence presented at trial. The juror at first answered, "I think I could," but when the trial court suggested, "you've got to be more reassuring than that," the juror stated: "I could." Based on that answer, the trial court denied appellant's challenge for cause.

As we held in *Lively v. State*, 262 Ga. 510 (1) (421 SE2d 528) (1992):

> When ruling on a potential juror's qualifications, the trial court must make a factual determination based on all the circumstances known to the court, including, but not limited to, the juror's own opinion of his impartiality.

Here, the juror himself was hesitant to say he could decide the case impartially, doing so only after the court told him he would have to be "more reassuring." We agree with the defendant that this admonition was more an "instruct[ion] on the desired answer" than a neutral attempt to determine the juror's impartiality.

Given the juror's close relationship to the trial judge, the district attorney, the latter's staff, law enforcement officers and the victim's family, his hauntingly similar experience with a member of his family being killed in a robbery of a grocery store, and his admitted bias in favor of the state, the defendant's challenge for cause should have been granted.

The cases cited by the state, see, e.g., *Tennon v. State*, 235 Ga. 594 (2) (220 SE2d 914) (1975), are inapposite. This case does not involve, as did *Tennon*, a potential juror who merely has hearsay information about the crime, and no other connection to the case or with the parties involved. This case also differs factually from our recent decision in *Johnson v. State*, 262 Ga. 652 (424 SE2d 271) (1993), in which this court upheld a trial court's refusal to strike for cause a juror who seemed uncertain of his ability to be impartial. The juror in that case did not have the extensive ties to the trial judge, the prosecution, the police, and the victim's family which led us to hold that the juror in this case should have been excused.

Since appellant was denied a full panel of 42 qualified jurors, his conviction must be reversed. *Harris v. State*, 255 Ga. 464 (2) (339 SE2d 712) (1986).

3. The remaining enumerations of error are mooted by our rever-

sal.[3]

*Judgment reversed. Clarke, C. J., Hunt, P. J., Fletcher, Sears-Collins, JJ., and Judge P. Harris Hines concur; Hunstein, J., not participating.*

DECIDED JANUARY 22, 1993 —
RECONSIDERATION DENIED FEBRUARY 5, 1993.

*Stephen R. Patton, Stephen B. Bright, Charlotta Norby,* for appellant.

*Douglas C. Pullen, District Attorney, J. Gray Conger, Jerry G. Croley, Assistant District Attorneys, Michael J. Bowers, Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.

---

[3] In particular, we need not address the defendant's contentions that the prosecutor failed timely to disclose exculpatory evidence to the defendant. The defendant is now aware of the existence of this evidence and presumably the state will comply with its duty to make all necessary disclosures at any retrial of this case.