S92A1332. DIAZ v. THE STATE.
(425 SE2d 869)

SEARS-COLLINS, Justice.

The appellant, Dennis Lee Diaz, was convicted of felony murder and two counts of cruelty to children. For purposes of sentencing, the trial court merged the convictions for cruelty to children with the felony murder conviction, and sentenced the appellant to life imprison-

ment for the latter conviction. The appellant now appeals, and we affirm.[1]

The evidence produced in this case showed that five-year-old Barry Kennedy disappeared from the duplex in which he lived with his mother, his two-year-old sister, Davida, and his mother's live-in boyfriend, the appellant. Donna Kennedy had last seen her son alive when she fixed hamburgers for the children before she left for work at approximately 8:00 p.m. on April 12, 1991. The children were left alone in the care of the appellant, while their mother worked the 9:00 p.m. to 7:00 a.m. shift at a Waffle House.

During the early morning hours of April 13, a neighbor heard Barry crying, the appellant yelling at Barry to be quiet, and the sounds of a beating. When Donna Kennedy returned from work the next morning, the appellant was acting strangely, steering her away from her childrens' bedroom, urging her to get some rest, and offering to take care of the children and do the laundry. Ms. Kennedy then went to sleep and the appellant left the duplex. Ms. Kennedy, who used a clean plastic garbage can to transport laundry, testified that she did not notice whether the appellant had the garbage can when he left the duplex. Ms. Kennedy was awakened later by Davida, and at that point, Ms. Kennedy noticed Barry's absence for the first time. Davida also had a large bruise on her face that was later determined to be consistent with a very forceful slap by someone's hand. The bruise had not been there when Ms. Kennedy left for work the night before, and the appellant had not informed Ms. Kennedy upon her return from work that Davida had fallen or that there had been any disturbance involving the children.

Meanwhile, about 10:30 or 11:00 that morning the appellant was seen with the garbage can at a dumpster near the duplex and was looking around furtively. Witnesses testified that the appellant had to use considerable force to lift the garbage can. When the appellant returned to the duplex later that afternoon, the plastic garbage can was in his car. Although the appellant claimed he had gone to a laundromat with the garbage can, the laundromat owner, who knew the appellant well, stated that he was in his store on April 13 and neither saw the appellant nor found the pair of blue jeans the appellant claimed he lost that day at the laundromat.

---

[1] The crimes occurred during the early morning hours of April 13, 1991. The appellant was indicted on June 21, 1991. He was convicted of felony murder and two counts of cruelty to children on October 31, 1991, and sentenced to life imprisonment on the same day. The appellant filed a motion for new trial on November 27, 1991. The court reporter certified the trial court transcript on December 20, 1991, and the appellant filed an amended motion for new trial on March 20, 1992. The motion for new trial, as amended, was denied by the trial court on May 14, 1992. The case was docketed in this court on September 1, 1992. The appeal was submitted for decision without oral arguments on September 11, 1993.

When the appellant was confronted with Davida's bruises and the neighbor's remarks, the appellant claimed that Davida had fallen off a stool in the kitchen while reaching for a glass of milk about 2:00 a.m., and that, because the children would not go to sleep, he "thumped [Davida] on the head" and slapped her on the hand and spanked Barry. The appellant claimed the incident lasted about 15 to 20 minutes.

Barry Kennedy's body was discovered in a lightly wooded area near Union City, on April 21, 1991. Blood and DNA sampling revealed that the garbage can taken from the house and the sheets and comforter taken from the childrens' bedroom had blood stains which matched the victim's blood and DNA types. Partially digested hamburger meat in the victim's stomach and the extent of decomposition of the victim's corpse indicated the victim was probably killed at about the time the neighbor heard the disturbance. The medical examiner was able to identify a blood clot on the brain and two lacerations of the liver but was unable to identify damage to soft external tissue because of the state of decomposition of the corpse. Photographs were introduced to show the jury why the medical examiner could identify internal injuries but not external ones.

1. In his fourth enumeration of error, the appellant contends that the evidence is insufficient to support the verdict. Reviewing the evidence in the light most favorable to the verdict, however, we hold that a rational trier of fact could have found appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first three enumerations of error, the appellant contends that the trial court erred by failing to strike two jurors, juror 1 and juror 2, for cause upon motion by the appellant, and that the trial court erred by removing another juror, juror 3, for cause upon motion by the state. These decisions are proper absent "manifest abuse of discretion." *Depree v. State*, 246 Ga. 240 (271 SE2d 155) (1980).

(a) Both the appellant and the state requested that the trial court strike juror 1 for cause. Juror 1 stated that she felt she had doubts about her objectivity but would try to be fair, and stated further that she felt she had an inability to pass judgment and that she would not want somebody like her to pass judgment on her. This juror also stated that if the other jurors voted to convict, she was not "real sure" she could vote guilty or decide upon a verdict. Having reviewed the transcript of this juror's voir dire testimony, however, we conclude that the trial court did not abuse its discretion by refusing to strike juror 1 on the basis of bias because juror 1 did not indicate a bias she was unable to lay aside. *Chancey v. State*, 256 Ga. 415, 425 (349 SE2d 717) (1986); *Hayes v. State*, 261 Ga. 439, 441 (405 SE2d 660) (1991); OCGA §§ 15-12-163; 15-12-164. Moreover, even assuming

that a juror's unequivocal statements of indecisiveness may serve as a ground for striking a juror for cause, we conclude that juror 1's equivocal statements about her reluctance to pass judgment did not disqualify her to serve on the jury.

(b) Similarly, the trial court properly denied the appellant's request that juror 2 be stricken for cause. Juror 2 stated during voir dire that when the police make an arrest, he may have a tendency to think "well, at least they got him," and that he felt the appellant was not starting "with an even field," but he also denied that he had formed an opinion in this case and he testified that he could listen to the testimony and not convict if the state did not prove its case. It was not manifest abuse of discretion for the court to conclude that juror 2 was not prejudiced, *Hayes v. State,* supra, 261 Ga. at 441, and to conclude that juror 2 was able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U. S. 717, 723 (81 SC 1639, 6 LE2d 751) (1961). Compare *Walker v. State,* 262 Ga. 694 (424 SE2d 782) (1993).

(c) Juror 3 stated at one point that she could never convict a person of murder and then stated later that she would have to be "100% sure" of the appellant's guilt before she could vote to convict. Because juror 3 demonstrated a bias for the defendant, the trial court did not abuse its discretion in striking her. See *Hatten v. State,* 253 Ga. 24, 26 (5) (315 SE2d 893) (1984).

3. The appellant, in his fifth enumeration of error, contends that the trial court erred by admitting into evidence the testimony of two inmates incarcerated with the appellant who claimed the appellant mumbled "Barry, don't run, come back" several times in his sleep. The trial court properly let the jury decide the weight and credibility of the alleged statements. *Buttersworth v. State,* 260 Ga. 795, 799 (400 SE2d 908) (1991) (discussing *Godfrey v. State,* 258 Ga. 28 (365 SE2d 93) (1988) and *Sutton v. State,* 237 Ga. 418 (228 SE2d 815) (1976)).

4. The appellant, in his sixth enumeration of error, contends that the trial court erred by admitting evidence of his consistently rough treatment of the children when their conduct displeased him. We conclude that this evidence was admissible as evidence of prior difficulties between the defendant and the victims. See *Sumpter v. State,* 260 Ga. 683, 684 (398 SE2d 12) (1990). The appellant's objection to the trial court's limiting instruction concerning this evidence is without merit as the transcript shows that the charge did not suggest the appellant had committed a prior crime and explicitly instructed the jurors as to the limited purpose of the evidence.

5. The appellant's final enumeration of error, which takes issue with the trial court's decision to admit three photographs of the victim's body, is without merit. The photographs were relevant and ma-

terial to the credibility of the testimony the medical examiner provided regarding the time of death and the inability to identify external wounds because of decomposition. The trial court did not abuse its discretion. *Hicks v. State,* 256 Ga. 715, 720-721 (352 SE2d 762) (1987).

*Judgment affirmed. Clarke, C. J., Hunt, P. J., Benham, Fletcher, Sears-Collins and Hunstein, JJ., concur.*

DECIDED FEBRUARY 18, 1993.

*J. Russell Mayer, R. Michael Whaley,* for appellant.

*Lewis R. Slaton, District Attorney, Carole E. Wall, Assistant District Attorney, Michael J. Bowers, Attorney General,* for appellee.