### S98A1783. MENEFEE v. THE STATE.
(512 SE2d 275)

THOMPSON, Justice.

Maurice A. Menefee was convicted of felony murder and aggravated assault in connection with the shooting death of Darryl Molder.[1] He appeals from the judgment of conviction. Because the trial court abused its discretion in failing to grant defendant's motion

---

[1] The crimes occurred on September 25, 1994. An indictment was returned on January 24, 1995, charging Menefee with malice murder, felony murder with the underlying felony of aggravated assault, and aggravated assault. Trial commenced on November 14, 1995, and on November 16, 1995, a jury found Menefee guilty of felony murder and aggravated assault. Sentencing took place on November 20, 1995, at which time the aggravated assault conviction was vacated and a life sentence was imposed for felony murder. A motion for new trial was filed on December 12, 1995, amended on December 30, 1996 and July 25, 1997. The amended motion for new trial was denied on August 7, 1997. An order granting a motion for out-of-time appeal was entered on May 19, 1998. A notice of appeal was filed on May 27,

to strike for cause a juror who could not lay aside feelings of racial prejudice against Menefee, defendant is entitled to a new trial.

Menefee fatally shot Molder in the arm and chest as Molder stood talking on a payphone in an apartment complex parking lot. Both lived with their respective girlfriends in the same apartment complex and competed in selling illegal drugs. Molder had recently moved into the complex and tension existed between the two men due to their competition in the drug trade.

The day before the shooting, Menefee's girlfriend's child had crawled underneath a car belonging to Molder's girlfriend to retrieve a ball. Molder's girlfriend accidentally struck the child with her car; however, the child was not seriously harmed. Upon learning of the incident, the child's mother reported it to the police. Immediately thereafter, Molder and his girlfriend went to Menefee's apartment, where she explained that the incident had been unintentional and apologized for it. During that visit, a gun was visible in Molder's pocket and he was observed clicking the safety on and off. In addition, Molder had words with Menefee's girlfriend saying that "ain't nothing wrong with your fucking child." Menefee was also present and witnessed the exchange. He later told his girlfriend that he perceived Molder's conduct as a threat, and that he was "tired of [Molder] threatening us like that."

The following morning Menefee's girlfriend heard a gunshot and ran from her apartment to the street to investigate. She observed Molder talking on a payphone. Menefee approached Molder, shot him twice, and then fled the state. Several other persons witnessed the shooting. While awaiting an ambulance, Molder was able to tell onlookers that "Maurice shot me."

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to enable a rational trier of fact to find Menefee guilty beyond a reasonable doubt of felony murder.

2. In response to a general voir dire question whether one had been the victim of a crime, a prospective juror disclosed that several years earlier she had been attacked at gunpoint and kidnapped, but succeeded in escaping from her attacker. Upon inquiry by defense counsel, the juror acknowledged that this experience would affect her service, adding that "there is [sic] racial issues involved." When asked to explain, the juror stated that "the person that attacked me was a black man and I would have to be able to overlook that." Upon further inquiry about her feelings concerning the defendant's race

1998, and the case was docketed in this Court on August 6, 1998. The case was submitted for decision on briefs on September 28, 1998.

and her earlier experience, she responded, "I don't really want to admit it, how I feel . . . prejudiced probably would be the way." She then unequivocally stated that she harbored racially-biased prejudice toward the defendant because of the encounter with her attacker. After defense counsel moved to strike the juror for cause, the court inquired whether she could set aside her previous experience and decide this case solely on the evidence and the court's instructions, to which she responded, "I would like to try . . . it's hard to say absolutely." Upon further questioning by the court, the juror merely stated that her feelings were something she "would have to deal with." In response to a follow-up question by the prosecutor as to whether she believed the defendant is guilty of the crime charged merely because he is an African-American male, the juror responded, "it crossed my mind." She then revealed that the reason it crossed her mind was because of her prejudice against the defendant based on his race. As defense counsel attempted to renew her motion, the court anticipated the request and again denied it.

In order to disqualify a prospective juror for cause on the basis that she could not fairly and impartially judge the case, the opinion must be so fixed and definite that it would not be changed by the evidence or the charge of the court during the trial of the case. *Garland v. State*, 263 Ga. 495 (1) (435 SE2d 431) (1993); *Johnson v. State*, 262 Ga. 652 (2) (424 SE2d 271) (1993).

Although we recognize that the " ' "determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge" ' [cit.]," *Arnold v. State*, 236 Ga. 534, 539 (6) (224 SE2d 386) (1976), and absent a manifest abuse of this discretion, we cannot require a new trial, *Diaz v. State*, 262 Ga. 750 (2) (425 SE2d 869) (1993), we nevertheless conclude that the questioning of the prospective juror failed to elicit the necessary response that she would be able to lay aside her prejudices and personal experiences and fairly and impartially decide the case on the evidence presented at trial. *Garland*, supra; *Diaz*, supra. Compare *Holmes v. State*, 269 Ga. 124 (2) (498 SE2d 732) (1998) (where a prospective juror expresses "doubts" or "reservations" as to her ability to put aside personal experiences, failure to strike for cause is not an abuse of discretion); *Garland*, supra; *Johnson*, supra. Because the juror expressed a distinct racial bias against the defendant, we cannot conclude that she merely had "doubts" or "reservations" as to her ability to put aside personal experiences. Since Menefee was denied a full panel of 42 qualified jurors, his conviction must be reversed. *Walker v. State*, 262 Ga. 694 (2) (424 SE2d 782) (1993).

3. At a pretrial hearing pursuant to *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), the State introduced evidence that two years earlier Menefee had been convicted of criminal assault result-

ing from the shooting of the father of Menefee's sister's child. It was shown that the victim and Menefee's sister had been arguing concerning their child. The victim left Menefee's sister's apartment, and as he was walking toward his car in the apartment complex parking lot, Menefee approached him, produced a small caliber handgun, and in a state of rage, shot the unarmed man in the chest. Menefee then fled the state. The prosecutor proffered the evidence to show course of conduct and to negate Menefee's claim of justification. The court ruled that there was sufficient similarity to the crimes charged; the evidence was relevant under *Williams*, supra, to show course of conduct; and proof of the former tends to prove the latter. During trial, the court gave careful limiting instructions to the jury, both at the time of admission of the evidence and at the close of the case.

On appeal Menefee asserts that the trial court erred in admitting evidence of his prior conviction on the basis that the evidence was insufficiently similar and provided no probative link to the crimes charged. We disagree.

As for the similarities between the two crimes, both resulted from Menefee's anger at men who had disparaged women with whom Menefee had a close relationship. In both situations, Menefee exhibited homicidal rage by shooting his unarmed victims with a small caliber handgun in a residential parking lot during daylight hours with witnesses present, and then fleeing to an adjacent state. We agree that the prior act was sufficiently similar to establish a logical connection between it and the offense charged.

In *Farley v. State*, 265 Ga. 622 (2) (458 SE2d 643) (1995), we held that evidence of a prior aggravated battery committed by the defendant which was sufficiently similar to the crime charged "was relevant to rebut [defendant's] claim of self-defense in this case by showing that he has a propensity for initiating and continuing unprovoked encounters which result in bodily harm to those whom he attacks." Id. at 624. The prior act evidence was relevant to show bent of mind or course of conduct. Id. Likewise, in the present case we hold that evidence of Menefee's prior conviction, which was sufficiently similar to the offense charged as to establish a logical connection between the two, was relevant to rebut his claim of justification by showing his bent of mind to commit the present offense. It follows that the evidence was properly admitted for that limited purpose.

4. We do not reach Menefee's remaining enumerations of error because they are not likely to recur on retrial.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., who concurs in the judgment and in Divisions 1, 2, and 4.*

DECIDED FEBRUARY 22, 1999.

*Elaine T. McGruder,* for appellant.

*Paul L. Howard, District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General,* for appellee.