## S07A0020. MAXWELL v. THE STATE.
### (644 SE2d 822)

SEARS, Chief Justice.

The appellant, Dionte Maxwell, appeals his convictions for felony murder and other crimes stemming from an incident in which he drove his car into a crowd, hitting and killing the victim.[1] On appeal, Maxwell contends, among other things, that the trial court erred by failing to strike certain jurors for cause; that OCGA § 40-6-395 is unconstitutional; and that the evidence is insufficient to support his convictions. Because we conclude that the trial court erred by failing to strike a certain juror for cause, we must reverse Maxwell's convictions.

1. The evidence showed that, about 3:00 a.m. on May 31, 2002, Maxwell was driving through the Buckhead Village in Atlanta. Because he was stopped in the middle of the street talking to people, he was approached by Atlanta police officers David English and Jim Carlino, both of whom were on foot. After Maxwell provided a fake identification, the officers asked him to turn off his car. Instead, Maxwell sped off. Officer Carlino shouted at Maxwell to stop and chased after his vehicle. Officer S.D. Rosenfeld, who was working an off-duty security job nearby, stepped in front of Maxwell's vehicle and yelled for Maxwell to stop. Maxwell, however, struck Officer Rosenfeld in the left arm and drove through a crowd of pedestrians, hitting and killing Mark Luptom-Smith. Maxwell sped off again, but was stopped by another officer about 4:30 a.m. in Roswell, Georgia. Although Maxwell fled on foot, he was caught and arrested. On the evening of the crimes, Officers English, Carlino, and Rosenfeld were wearing full police uniforms displaying their badges of office.

---

[1] The crimes occurred on May 31, 2002. On January 30, 2004, Maxwell was indicted for four counts of felony murder, with the underlying felonies being aggravated assault with a vehicle; hit and run under OCGA § 40-6-270 (b); obstruction of a peace officer; and felony fleeing and attempting to elude under OCGA § 40-6-395. Maxwell was also indicted for two counts of homicide by vehicle; for aggravated assault on a peace officer; for having no proof of insurance; for fleeing and attempting to elude; and for giving false information to a police officer. On June 17, 2004, a jury found Maxwell guilty on all counts except one count of homicide by vehicle. On that same day, the trial court sentenced Maxwell to life in prison for the felony murder count with aggravated assault by vehicle as the underlying felony. The court merged the remaining felony murder counts, as well as the second count of homicide by vehicle. The court sentenced Maxwell to fifteen consecutive years for the aggravated assault of a police officer; to twelve concurrent months in prison for having no proof of insurance; to five consecutive years in prison for fleeing and attempting to elude; and to twelve concurrent months for giving false information to a police officer. On July 2, 2004, Maxwell filed a motion for new trial, and on August 11, 2005, he filed an amended motion for new trial. On April 4, 2006, the trial court denied the motion for new trial, as amended, and on April 24, 2006, Maxwell filed a notice of appeal. The appeal was docketed in this Court on August 31, 2006, and was submitted for decision on briefs.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that it was sufficient for a rational trier of fact to have found Maxwell guilty beyond a reasonable doubt of all the crimes for which he was convicted,[2] including, for the reasons explained below, the crime of fleeing and eluding a police officer.

As for this latter crime, we must address Maxwell's contention that, under the interpretation of OCGA § 40-6-395 that he urges, the evidence is insufficient to support his conviction.[3] For the reasons that follow, we disagree.

OCGA § 40-6-395 provides, in relevant part, as follows:

> (a) It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.

Maxwell contends that this Code section only applies when an officer is in a police vehicle, and that, as the officers who signaled him to stop in this case were on foot, the evidence is insufficient to support his conviction under OCGA § 40-6-395. We disagree with Maxwell's interpretation of the statute.

A criminal statute " 'must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted.' "[4] We conclude, however, that OCGA § 40-6-395 (a) is not susceptible to more than one reasonable interpretation.

"[C]ourts should construe a statute to give 'sensible and intelligent effect' to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless."[5] Moreover, "in construing language in any one

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] Maxwell also contends that OCGA § 40-6-395 is unconstitutionally vague. However, because this challenge was not raised during trial, Maxwell is procedurally barred from raising it on appeal.

[4] *Vines v. State*, 269 Ga. 438, 438-439 (499 SE2d 630) (1998), quoting *Fleet Finance v. Jones*, 263 Ga. 228, 231 (3) (430 SE2d 352) (1993).

[5] *Sikes v. State*, 268 Ga. 19, 21 (485 SE2d 206) (1997).

part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole."[6]

The first sentence of OCGA § 40-6-395 (a) provides that a person violates the Code section if he refuses to stop when he flees or attempts to elude either a "pursuing police vehicle or police officer." If the phrase "pursuing . . . police officer" does not mean a police officer on foot, then the phrase is meaningless, as the phrase "pursuing police vehicle" covers all police officers pursing in a police vehicle. Because courts should not construe any part of a statute to be meaningless, we decline to construe the first sentence of OCGA § 40-6-395 (a) to apply only to police vehicles. Instead, we construe this sentence to express an intent that it is unlawful for a driver of a vehicle to fail to stop when given a signal to do so by a police officer on foot.

Moreover, the second sentence of OCGA § 40-6-395 (a) specifies that the signal given by a police officer may be by hand or voice. In this regard, police officers using hand and voice signals will almost uniformly be on foot.

Maxwell, however, contends that the last sentence of OCGA § 40-6-395 (a) implies that the statute is applicable only when a police officer is in a police vehicle. However, to construe the last sentence of subsection (a) as requiring the police officer to be in a police vehicle renders meaningless the parts of the first and second sentences of the statute that indicate that it is unlawful to flee when a police officer who is not in a vehicle gives a signal to stop. In addition, the construction urged by Maxwell would defeat the legislative intent expressed by the foregoing parts of the statute of having drivers obey commands given by officers who are on foot. Moreover, the last sentence of subsection (a) is easily harmonized with the first and second sentences by construing it to mean that, when a police officer who is not in a vehicle gives a signal to stop, he or she must be "in uniform prominently displaying his or her badge of office," and to mean that, when an officer who is in a police vehicle gives a signal to stop, the police vehicle must be appropriately marked. We thus conclude that the purpose of the last sentence of subsection (a) is to insure that drivers of vehicles will have notice that they are being signaled to stop by the police and not to provide that it is only unlawful to fail to stop when given a signal to do so by an officer in a police vehicle.

Accordingly, in the present case, when Maxwell failed to stop after being given a signal to do so by a police officer on foot and in

---

[6] Id.

uniform, he violated OCGA § 40-6-395. The evidence is thus sufficient to support his conviction for fleeing and attempting to elude.

2. Maxwell contends that the trial court erred in failing to strike three prospective jurors for cause.

(a) On voir dire, Juror No. 7 stated that he did not think he could be "totally unbiased in this case because of the media coverage that I've seen and the slant. I have pretty much formed an opinion already." In response to questions from the prosecutor, the juror then stated that he understood that he had not heard any evidence; that the defendant was presumed innocent; and that the State had to prove his guilt. When the prosecutor asked if he would try to keep an open mind, the juror answered that he "would try, but again it would be difficult based on my experience with the media." After a series of other questions, the prosecutor again asked the juror if he would try to be fair and impartial if he were selected as a juror. The juror answered that he "would try." Defense counsel then questioned the juror, and asked if he had formed an opinion about the case based upon what he had heard from the media. The juror answered that "[i]t seemed as if the person was guilty of the crime that they alleged that they did" and that he still had the same opinion "because I've not heard any evidence to sway my opinion any differently." The juror also twice stated that, "of course," it would be the defense's job to "prove that Mr. Maxwell was not involved"; that he had a bias towards the prosecution; and that he was "probably not" the right juror to sit on the case. The trial court did not question Juror No. 7 at all, and thus did not attempt to clarify the juror's possible biases in the case.

(b) Juror No. 10 had a friend who was killed by a drunk driver. The prosecutor asked the juror whether, in light of her friend's death, she could decide the case based solely on the evidence presented at trial if she were selected as a juror. The juror answered, "Possibly. I don't know." When asked if she would try to do that, she stated "I could try, yes." The juror also stated that, because of her friend's death, she had a leaning in favor of the State, and that, if there was evidence shown of Maxwell's guilt, she would expect him to produce some evidence to change her mind.

(c) Juror No. 37 stated that she had a wedding rehearsal on the Friday of the week of the trial. She added that, if she were selected as a juror in the case, she would be distracted towards the end of the trial, and that, if the trial extended past 4:00 p.m. on Friday, it might be hard for Maxwell to receive a fair trial. The juror also stated that she was a "little bit" biased against the defense, but that she would listen and "try to be fair." Defense counsel asked the juror whether, if she were selected as a juror, after hearing the evidence and the trial court's instructions, she would expect the defense to have any burden. The juror stated, "I don't know. I guess it would depend on how the

case went, what I heard. I mean, I would listen and be as fair as I could." The juror also stated that she had not made up her mind entirely about Maxwell's guilt or innocence, but that she was biased.

(d) In *Menefee v. State*,[7] a prospective juror stated that she previously had been attacked at gunpoint by a black man and therefore had a racial bias against the defendant. When the trial court asked the juror if she could set aside her previous experience and decide the case based on the evidence and the trial court's charge, the prospective juror stated that she " 'would like to try . . . it's hard to say absolutely.' "[8] The defendant moved that the trial court strike the juror for cause, but the court refused to do so. On appeal, we reversed. We acknowledged that the decision whether to strike a juror for cause is within the sound discretion of the trial court and that a juror's demeanor plays an important part in that determination and is particularly within the province of the trial judge.[9] However, because of the distinct bias expressed by the juror, we concluded that the "questioning of the prospective juror failed to elicit the necessary response that she would be able to lay aside her prejudices and personal experiences and fairly and impartially decide the case on the evidence presented at trial."[10] Accordingly, we ruled that the trial court abused its discretion in refusing to strike the juror for cause, and reversed the defendant's conviction.

Similarly, in the present case, Juror No. 7 expressed a distinct bias against Maxwell, stating that he had "pretty much formed an opinion already"; that "[i]t seemed as if [Maxwell] was guilty of the crime" alleged; and that, "of course," it would be the defense's job to "prove that Mr. Maxwell was not involved." Moreover, although the trial court in *Menefee* at least questioned the prospective juror regarding whether she could set aside her bias, the trial court in the present case failed to question Juror No. 7 at all. Thus, the trial court "failed to elicit the necessary response that [Juror No. 7] would be able to lay aside [his] prejudices and personal experiences and fairly and impartially decide the case on the evidence presented at trial."[11] Accordingly, we conclude that the trial court abused its discretion in failing to strike Juror No. 7 for cause. For this reason, Maxwell's conviction must be reversed.[12]

---

[7] 270 Ga. 540 (512 SE2d 275) (1999).

[8] Id. at 542.

[9] Id.

[10] Id.

[11] Id.

[12] Id. (If a defendant is denied a full panel of qualified jurors, his conviction must be reversed.)

(e) Having reversed Maxwell's convictions based on the trial court's failure to strike Juror No. 7 for cause, we need not resolve whether the trial court erred in failing to strike Juror Nos. 10 and 37 for cause as well.

3. Because Maxwell's remaining contentions are not likely to recur in the event of a retrial,[13] we need not address them at this time either.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 14, 2007.

*Robert Kenner, Jr.,* for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General,* for appellee.

---

[13] *Willingham v. State,* 279 Ga. 886, 889 (622 SE2d 343) (2005).