**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**April 14, 2015**

# In the Court of Appeals of Georgia

A14A2206. ROBINSON v. THE STATE.

RAY, Judge.

A Fulton County jury convicted Jonathan Robinson of two counts of rape, two counts of kidnaping and one count of armed robbery. He was acquitted of one count of rape, one count of aggravated sodomy and one count of impersonating a police officer.[1] He appeals from the denial of his motion for new trial, contending that the trial court erred in denying his motion for recusal, in permitting evidence of his prior arrests and convictions into evidence for the purposes of impeachment, in failing to excuse a prospective juror for cause, and in issuing improper jury charges. He also contends that he received ineffective assistance from his trial counsel. For the

---

[1] Robinson was acquitted of rape and aggravated sodomy arising from an incident with a third victim.

following reasons, we vacate Robinson's conviction and remand the case to the trial court for further proceedings consistent with this opinion.

The evidence, construed in favor of the jury's verdict, showed that on May 13, 2000, K. C. was standing at a telephone booth near a gas station when Robinson approached her and offered her a ride. K. C. got into his vehicle, and he drove to a secluded street. Robinson "propositioned [her] with money" , and she declined. He then got a police clipboard out of the back of his car and used a radio ostensibly to call for backup. Robinson then became aggressive, came around to K. C.'s side of the car, and raped her. K. C. had just had a baby and was still recovering from the birth. Robinson then drove K. C. home, where she told her mother that she had been sexually assaulted and that she needed to call 911. K. C. testified that she had never before met Robinson.

That same day, a sexual assault exam was conducted on K. C.. A rape kit was collected as evidence after the exam. K. C. was crying and upset while at the hospital. The Georgia Bureau of Investigation ("GBI") developed a male DNA profile from the rape kit and uploaded it into the CODIS database. On December 12, 2002, a CODIS match indicated Robinson as being connected with K. C.'s case.

On May 30, 1999, Robinson approached R. A. and offered her a ride in his truck. At first R. A. was going to get in the truck, but ultimately decided not to because something did not feel right to her. However, Robinson swung open the truck door and dragged R. A. into the truck by her hair. R. A. begged Robinson not to hurt her and gave him all the money she had. Robinson parked the truck, informing her that he had a weapon under the seat of his truck and that he would kill her if she did not comply with his demands. He then raped her. Robinson then told R. A. to put her money, cell phone and jewelry in her purse, and he took it and threw it in the back of the truck. Robinson also took R. A.'s panties. He told her to get out of the truck or that he would run over her, so she got out of the truck.

That same day, R. A. went to the hospital to have a sexual assault exam. R. A. was described as crying uncontrollably while at the hospital. The GBI developed a male DNA profile from the rape kit collected and uploaded it into the CODIS database. In February 2002, a CODIS match came indicated Robinson as being connected with R. A.'s case. R. A. testified that she had never met Robinson before.

Robinson testified in his own defense at trial, alleging that the victims consented to having sex with him.

1. Robinson contends that the trial judge erred in denying his untimely motion to recuse and in failing to recuse herself sua sponte. He also claims that his trial counsel rendered ineffective assistance for failing to properly pursue this claim. We disagree.

(a) At the time of Robinson's indictment, the trial judge was a chief senior assistant district attorney in the Fulton County District Attorney's Office in the Crimes Against Women and Children ("CWAC") Unit. The trial judge stated that she never touched any of the case files related to Robinson during her time with the District Attorney's Office.

"[W]hen a motion to recuse is filed, the trial judge shall immediately determine: (1) the timeliness of the motion; (2) the legal sufficiency of the affidavit; and (3) the legal sufficiency of the grounds, and has no power to do anything else in the case." (Citations omitted.) *Baptiste v. State*, 229 Ga. App. 691, 698 (2) (494 SE2d 530) (1997). See Uniform Superior Court Rule 25.1 ("All motions to recuse . . . shall be timely filed in writing and all evidence thereon shall be presented by accompanying affidavit(s) which shall fully assert the facts upon which the motion is founded").

4

Here, Robinson's motion to recuse was both untimely and failed to attach the required affidavit in support of the grounds he asserted in support of his motion. Robinson's trial counsel, who had been an assistant district attorney in the Fulton County District Attorney's Office at the same time as the trial judge , did not file a motion to recuse until more than three months after filing a notice of appearance in the case.

See Uniform Superior Court Rule 25.1 ("Filing and presentation to the judge shall be not later than five (5) days after the affiant first learned of the alleged grounds for disqualification. . ."). Further, the motion alleged only the conclusory statement that the trial judge had a "conflict of interest . . . with [another judge] and the Fulton County District Attorney's Office Crimes Against Women and Children Unit." The motion was not accompanied by a supporting affidavit "clearly stat[ing] the facts and reasons for the belief that bias or prejudice exists, being definite and specific as to time, place, persons and circumstances of extra-judicial conduct or statements . . ." as required by Uniform Superior Court Rules 25.1 and 25.2. Accordingly, the trial court did not abuse its discretion in denying his motion to recuse. See *Daker v. State*, 243 Ga. App. 848, 855 (21) (533 SE2d 393) (2000) (A

5

trial judge is authorize to deny a motion for recusal on its face when the motion is untimely and not supported by a sufficient affidavit).

Further, Robinson's motion itself failed to specifically allege facts that, if assumed true, would demonstrate that the trial judge, while still a prosecutor, ever had any personal or supervisory involvement in the present criminal matter. Rather, it simply asserted that the trial judge might have a "conflict of interest" because of her prior employment with the District Attorney's office. See *Gude v. State*, 289 Ga. 46, 49 (2) (a) (709 SE2d 206) (2011) (finding that a trial judge presiding over a criminal matter who previously worked in the district attorney's office while the office was involved in some aspect of the same criminal matter need not recuse herself unless the trial judge, while still a prosecutor, was personally involved in some aspect of the criminal matter or served in a supervisory role over another lawyer while that lawyer was personally involved in the case). Compare *Birt v. State*, 256 Ga. 483, 484-485 (3) , (4) (350 SE2d 241) (1986) (defendant, who had made timely and verified motion to recuse setting forth sufficient factual allegations, was entitled to evidentiary hearing on motion, where verified motion set forth some factual allegations, which, if proved, could support finding of partiality sufficient to require recusal). We find no abuse of discretion in the trial court's denial of his motion to recuse.

6

(b) We further find that Robinson's ineffective assistance claim arising from his trial counsel's failure to file the affidavit is without merit. In order to prove that he received ineffective assistance of counsel, Robinson must show both "that his trial counsel's performance was deficient and that the deficiency was so prejudicial that a reasonable likelihood exists that the outcome of the trial would have been different but for counsel's error." (Footnote omitted.) *Paul v. State*, 296 Ga. App. 6, 10 (3) (673 SE2d 551) (2009). Robinson has not shown how a timely filed affidavit would have effected the ruling on his motion to recuse, we find that he has not supported his burden of proving that he was prejudiced by his trial counsel's error. See *Gude*, supra.

2. Robinson argues that the trial court erred in permitting the State to impeach him with evidence of prior arrests. We find no error.

Robinson filed a motion in limine seeking the exclusion of any evidence regarding his arrests that did not result in convictions. This motion was granted. However, Robinson's strategy at trial was to establish that the prosecution against him had been pushed by a particular investigator in the Atlanta Police Department in retaliation for Robinson's successful internal complaint against her. His arrest for the charges against R. A. and K. C. occurred the day after he received notice that the investigator was sanctioned for her improper processing of his vehicle and mobile

7

phone after his earlier arrest for his alleged acts against the third victim in this case. Robinson also indicated that he had made as many as seven or eight complaints against the Atlanta Police Department in the past. The trial court found that the testimony elicited by the defense counsel that Robinson had made many complaints against the police in the past "opened the door" to the State's admission of his prior arrests for stealing cars from the Atlanta Police Department, reasoning that his testimony gave "the impression that all of those complaints were related [to the instant case] when that's not necessarily the case." Accordingly, the the trial court allowed the State to ask if Robinson had been arrested and charged with stealing cars from the Atlanta Police Department, to which Robinson said, "Yes."

"The trial court has broad discretion in determining the scope and extent of cross-examination; absent a clear abuse of discretion, the action of the trial court will not be disturbed." (Citations and punctuation omitted.) *Williams v. State*, 303 Ga. App. 222, 229 (4) (692 SE2d 820) (2010). "Evidence that is relevant and material to an issue in the case is not made inadmissible because it incidentally places the defendant's character in issue." (Citation and punctuation omitted.) *Mayberry v. State*, 301 Ga. App. 503, 506 (2) (687 SE2d 893) (2009).

8

Here, however, the State does not argue and the trial court did not hold that Robinson placed his character into issue, but rather that the evidence is admissible to fully explain that not all of Robinson's "seven or eight" prior complaints against the Atlanta Police Department stemmed from his arrest for the crimes in the instant case. The trial court noted that Robinson's prior complaints against the Police Department were first raised by the defense. We agree that Robinson opened to the door to this issue by the defense's questioning of Robinson with regard to his history of filing complaints against the department when his defense involved a theory that a particular officer encouraged his indictment as a retaliatory mechanism. Robinson cannot seek to exclude further details concerning the same area of inquiry that he introduced."[O]ne cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice." (Citations and punctuation and omitted.) *Mayberry*, supra at 507 (2) (finding that trial court did not abuse its discretion in finding that defendant opened the door to the admission of evidence that he had previously killed a man, but not been convicted for the act, when defense counsel asked a witness whether the witness had a conversation about defendant shooting someone who broke into his house).

9

Because the evidence of Robinson's prior arrests for stealing cars belonging to the Atlanta Police Department was relevant and material to his prior complaints filed with the Department and to his theory of defense, we cannot say that the trial court abused its discretion in overruling the objection.

To the extent that Robinson contends that the State did not lay a proper foundation for the evidence by providing a certified copy of his arrest records, he has waived his right to raise that issue on appeal because it was not asserted in the trial court. See *Green v. State*, 298 Ga. App. 17, 26 (7) , n. 6 (679 SE2d 348) (2009).

3. Robinson asserts that the trial court erroneously permitted the State to impeach him with evidence of his prior convictions under former OCGA § 24-9-84.1[2] without conducting the proper balancing tests. We agree.

(a) Robinson challenges the admission of his 2001 conviction for theft by receiving motor vehicle, arguing that the trial court failed to conduct the required balancing test prior to admitting the evidence.

"Evidence of a defendant's felony conviction that was less than ten years old was admissible if the probative value of the evidence *substantially* outweighed its

---

[2] Because this case was tried before 2013, the new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214 §101. For impeachment by prior convictions under the new Evidence Code, see OCGA § 24-6-609 (a) (1).

prejudicial effect to the defendant." (Footnote omitted; emphasis in original.) *Waye v. State*, 326 Ga. App. 202, 205 (3) (756 SE2d 287) (2014). See OCGA § 24-9-84.1 (a) (2). In *Clay v. State*, 290 Ga. 822 (725 SE2d 260) (2012), the Georgia Supreme Court identified five factors that a trial court should consider when conducting the balancing analysis:

> (1) the nature, i.e., impeachment value of the crime; (2) the time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime, so that admitting the prior conviction does not create an unacceptable risk that the jury will consider it as evidence that the defendant committed the crime for which he is on trial; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.

(Citations omitted.) Id. at 835 (3) (B). Further, "[t]he trial court's finding that the probative value of the prior conviction outweighed its prejudicial effect must be made on the record, but there is no requirement in the language of [former] OCGA § 24-9-84.1 (a) (2) that the trial court *must* list the specific factors it considered in ruling on the probity of convictions that are not more than ten years old." (Footnote omitted.) *Johnson v. State*, 328 Ga. App. 702, 707 (3) (760 SE2d 682) (2014).

Here, the trial court initially ruled the conviction inadmissible at the pre-trial motion in limine hearing, but then it later ruled that the State could introduce it at

11

trial. After the evidence was introduced, the trial court found that "based on a question asked by the defense concerning any previous complaints . . . that might have been filed by the defendant against the Atlanta Police Department, that the door was opened" for an explanation, and thus, that the probative value of the conviction substantially outweighed any prejudicial effects it might have upon the defendant. However, it appears from the trial court's ruling that it believed that Robinson's 2001 conviction for theft by receiving motor vehicle was related to the Atlanta Police Department. An examination of the record reveals that Robinson pled guilty to that offense in the Dekalb County Superior Court and there is no indication from the exhibits or testimony at trial that the conviction was related to the Atlanta Police Department. As the lower court appears to be mistaken in its assumption that the 2001 conviction was related to Robinson's history with the Atlanta Police Department, it erred in its finding regarding its probative value. Accordingly, we vacate the judgment and remand the case for the trial court to make an on-the-record finding of whether the probative value of admitting the 2001 conviction substantially outweighed its prejudicial effect. See *Waye,* supra at 206 (3).

(b) Robinson next challenges the admission for impeachment purposes of his 1985 conviction for impersonating a police officer.

Robinson filed a motion in limine to exclude his 1985 conviction for impersonating a police officer. The trial court ruled that the 1985 conviction would be admissible for the purpose of impeachment if Robinson decided to testify. The State was then allowed to question Robinson about the conviction. After testimony was elicited from Robinson regarding these convictions, the trial court emphasized that the probative value of these convictions outweighed any prejudicial effects because it was a "crime of moral turpitude."

We have held that former OCGA § 24–9-84.1 (b) "establishe[d] a presumption against the admission of evidence of a conviction if more than ten years had elapsed since the date of the conviction or the release of the defendant . . . from the confinement imposed for that conviction, whichever was later." *Peak v. State*, 330 Ga. App. 528 (768 SE2d 275) (2015). OCGA § 24-9-84.1 (b) provides:

> Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of . . . the defendant from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect. . . .

Our Supreme Court has held that a consideration of the factors identified above is mandatory when a trial court evaluates whether to admit a conviction for impeachment purposes that is more than ten years old. *Clay*, supra at 838 (3) (B) ("A trial court must make an on-the-record finding of the specific facts and circumstances upon which it relies in determining that the probative value of a prior conviction that is more than ten years old substantially outweighs its prejudicial effect before admitting evidence for impeachment purposes under OCGA § 24-9-84.1 (b)").

A thorough review of the record shows that the trial court failed to make express findings in determining whether the 1985 conviction for impersonating a police officer was admissible. The trial court failed to do so again in its order denying Robinson's motion for new trial. Accordingly, we must vacate Robinson's convictions and remand the case to the trial court to reconsider defendant's motion for a new trial after making on-the-record findings regarding the facts and circumstances on which it relied in determining the probative value and prejudicial effect of the defendant's 1985 conviction for impersonating a police officer. See *Peak,* supra (vacating conviction and remanding case to the trial court to reconsider defendant's motion for new trial after making on-the-record findings, based upon the factors set forth in *Clay* and other factors it may deem relevant, of the facts and

14

circumstances on which it relied in determining the probative value and prejudicial effect of the admission of defendant's convictions older than 10 years old).

4. Robinson argues that the trial court abused its discretion in denying his motion to excuse Prospective Juror Number 30 for cause. We disagree.

"The decision [whether] to strike a potential juror for cause lies within the sound discretion of the trial court and will not be set aside absent some manifest abuse of that discretion." (Citation omitted.) *Abdullah v. State*, 284 Ga. 399, 400 (2) (667 SE2d 584) (2008).

> Unless the juror holds an opinion regarding the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based on the evidence and court instructions, a court need not excuse the juror for cause. A potential juror's doubts as to his or her own impartiality or reservations about his or her ability to set aside personal experiences do not necessarily require the court to strike the juror, as the judge is uniquely positioned to observe the juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict.

(Citation omitted.) *Beaudoin v. State*, 311 Ga. App. 91, 92-93 (2) (714 SE2d 624) (2011).

15

During general voir dire, Juror No. 30 raised her hand to answer, in the affirmative, the Court's question that she had already formed any "opinion in regard to the guilt or innocence of the defendant[.]" She also raised her hand to answer defense counsel's questions, in the affirmative, that she held a belief that "if a person is charged with three separate cases, he must be guilty of something[,]" and that she "could not keep an open mind in a rape case[.]"

During individual voir dire, Juror No. 30 stated that she had raised her number card in response to these questions because she "naturally form[ed] an opinion upon" hearing the indictment. Despite this, however, she agreed that, if selected as a juror, she would be able to follow the law, as instructed by the trial judge, and base her decision solely upon evidence presented in the courtroom. She further agreed that she could operate under the assumption that a defendant is innocent until proven guilty beyond a reasonable doubt. Defense counsel then asked her to clarify her earlier response that she had formed an opinion about the case and to explain what that opinion was. Juror No. 30 responded that she formed an opinion, after hearing the indictment, that Robinson had "dressed up as a police officer and attacked and raped three women who were prostitutes, probably[.]" Juror No. 30 then again agreed that

16

her opinion was not so firmly held that she could not listen to the evidence presented in the case.

Robinson moved to strike Juror No. 30 for cause, and the trial court denied the motion. When denying the motion, the trial court explained that it interpreted Juror No. 30's statement as merely an attempt to clarify her earlier response in an effort to answer the defense counsel's question. It further noted that it was persuaded by the juror's statement that she believed she could listen to the evidence. This Court has held that in order to strike a juror for bias, there must be evidence that the juror is so inured in his or her position that such juror will be unable to set his or her bias aside. See *Moorer v. State*, 286 Ga. App. 395, 398 (2) (649 SE2d 537) (2007). In light of the juror's consistent statements that she believed she could listen to the evidence and base her decision upon that evidence and the law as provided by the trial court, we find that the trial court did not abuse its discretion in denying Robinson's motion to strike.

Robinson's citation to *Maxwell v. State*, 282 Ga. 22, 25-26 (2) (a) (644 SE2d 822) (2007) does not warrant a different result. In *Maxwell*, our Supreme Court found that a trial court's refusal to strike a prospective juror for cause was in error when the prospective juror stated that he was influenced by media coverage and stated that he

17

had "pretty much formed an opinion already," that it would be the defense's job to "prove that [defendant] was not involved," and the prospective juror was not questioned as to whether he could set aside his personal bias and fairly and impartially decide the case based upon evidence presented at trial. Unlike the juror in *Maxwell*, Juror No. 30 in the present case stated that she understood that the defendant was innocent until proven guilty beyond a reasonable doubt, and she stated that she could decide the case upon the evidence presented at trial.

We find no abuse of discretion.

5. Robinson next asserts that the trial court erred in charging the jury that a witness can be impeached both by proof of general bad character and proof of a conviction on a crime of moral turpitude. He further asserts that his trial counsel rendered ineffective assistance for failing to object to the erroneous jury charge.

(a) The trial court charged the jury that "[t]o impeach a witness is to prove that a witness is unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified; proof of general bad character; [and] proof that the witness has been convicted of a crime of moral turpitude." The trial court then defined "moral turpitude." At the conclusion of the jury instructions, the State brought the trial court's attention to the fact that the law, and the applicable jury

18

instruction on impeachment by prior conviction, had changed to replace the phrase

"moral turpitude" with the phrase "dishonesty or making a false statement." The trial

court then called the jury back into the courtroom and supplemented its charge by

instructing them that a witness may be impeached by proof of the conviction of a

crime involving dishonesty or false statements. The trial court did not withdraw its

previous impeachment charge, but rather stated that the additional charge was to be

considered "[i]n addition to the [charge] I've already read to you." . Defense counsel

did not object to either the charge or to the amended charge on impeachment.

On appellate review, this Court considers the charge as a whole to determine

if it clearly and correctly instructed the jury. *Conn v. State*, 300 Ga. App. 193, 197 (3)

(685 SE2d 745) (2009). However, because Robinson's trial attorney made no

objection to the trial court's charge on impeachment or its corrected charge, Robinson

has "failed to preserve this objection for appellate review, and [he] is entitled to

reversal only if the jury instruction constituted 'plain error.'" (Citation omitted.)

*Hines v. State*, 320 Ga. App. 854, 864 (5) (b) (740 SE2d 786) (2013).

> In conducting a plain error review, we
>
> consider first whether the record establishes an error or defect – some
> sort of deviation from a legal rule – that has not been intentionally

19

relinquished or abandoned, i.e., affirmatively waived, by the appellant. If so, we then consider whether the error was clear or obvious, whether it likely affected the outcome of the trial, and whether we should exercise our discretion to remedy the error.

(Citation omitted.) *Id.* at 864-865 (5) (b). When considering the first step in the plain error analysis, "we are mindful that it is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citation and punctuation omitted.) Id.

Prior to 2005, Georgia law held that a witness could be impeached by proof that the witness had been convicted of a crime involving moral turpitude. *Conn*, supra. However, OCGA § 24-9-84.1 superceded this impeachment rule in trials, such as the present one, commencing on or after July 1, 2005. OCGA § 24-9-84.1 replaced the phrase "moral turpitude" in the statute with the phrase "dishonesty or making a false statement." OCGA § 24-9-84.1 (a) (3).

In a nearly identical case, this Court held that a trial court's erroneous jury charge under the prior statute that a witness could be impeached "by proof that the witness has been convicted of a crime of moral turpitude[,]" rather than the applicable standard that a witness could be impeached by proof that the witness had been convicted of a crime of "dishonesty or making a false statement," was not reversible

20

error. *Smallwood v. State*, 296 Ga. App. 16, 19-20 (2) (673 SE2d 537) (2009), overruled on other grounds by *Stephens v. State*, 289 Ga. 758, 759 (1) (a), n. 2 (716 SE2d 154) (2013). This Court held that there was no reversible error when "the court made clear that a felony conviction can be offered to impeach a witness." (Footnote omitted.) *Smallwood*, supra. See *Smith v. State*, 291 Ga. App. 389, 391 (2) (662 SE2d 201) (2008) ("[W]here [a] charge . . . considered as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence.") (footnote omitted).

Here, a review of the charges as a whole shows that, in addition to the reference to impeachment by a crime of moral turpitude, the jury was given extensive instructions which elaborated upon principles applicable to impeachment by other methods, including by proof of contradictory statements or by a conviction of a crime involving dishonesty or bad character. See *Francis v. State*, 266 Ga. 69, 72 (3) (463 SE2d 859) (1995) (finding no reversible error when the jury was instructed with an unauthorized charge on impeachment by conviction of a crime of moral turpitude when the charge at question "appears to be no more than a passing general reference]," and was "one of a number of stated methods of impeachment").

21

Further, we cannot say that the trial court's erroneous charge altered Robinson's verdict. The fact that the jury acquitted Robinson of the rape and aggravated sodomy charges involving the third victim and of impersonating a police officer indicates that the jury did not disregard or discredit the entirety of Robinson's testimony. We find no plain error.

(b) We further find no basis for Robinson's claim that his trial counsel rendered ineffective assistance for failing to object to the jury instruction on impeachment by a criminal conviction involving moral turpitude.

To prevail on an ineffective assistance of counsel claim, Robinson must prove both prongs of the test set out in *Strickland v. Washington*, 466 U. S. 668, 695-696 (III) (B) (104 S. Ct. 2052, 80 LE2d 674) (1984). They are: (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. Failure to satisfy either prong of this two-part test is fatal to an ineffective assistance claim. *Thomas v. State*, 291 Ga. App. 795, 804 (6) (662 SE2d 849) (2008). A trial court's finding that a defendant did not receive ineffective assistance of counsel will not be disturbed absent an abuse of discretion. Id.

22

Here, we find that Robinson has not met his burden of proving that, but for the erroneous jury charge, the result of his trial would have been different. "The inapplicable portion of the impeachment charge was contained in a lengthy instruction detailing other permissible methods of impeachment and appears to be no more than a passing general reference." (Citations and punctuation omitted.) *Miller v. State*, 281 Ga. App. 354, 355 (1) (636 SE2d 60) (2006). See *Hardy v. State*, 240 Ga. App. 115, 120 (6) (522 SE2d 704) (1999) (harmful effect of erroneous portion of impeachment charge was mitigated by the remainder of the charge). When viewing the trial court's instruction as a whole, even if Robinson's trial counsel was deficient in failing to object to the inapplicable instruction, Robinson has not shown a reasonable probability that his trial counsel's performance changed the outcome of his trial. See *Miller*, supra.

*Judgment vacated and case remanded with direction. Andrews, P. J., and McFadden, J., concur*.